JOSEPH S. BEEMSTERBOER
Acting Chief

KEVIN LOWELL
TIAN HUANG
Trial Attorneys
United States Department of Justice
Fraud Section, Criminal Division
    1400 New York Avenue
    Washington, D.C. 20005
    Telephone:    (202) 262-7795
    E-mail:    kevin.lowell@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA



```
LODGED
CLERK, U.S. DISTRICT COURT

5/13/2022

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ jb _____ DEPUTY
```



```
FILED
CLERK, U.S. DISTRICT COURT

5/13/2022

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ jb _____ DEPUTY
```

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          **Plaintiff,**<br><br>          v.<br><br>MICHAEL ALAN STOLLERY ("a/k/a<br>MICHAEL STOLLAIRE"),<br><br>          **Defendant.** | **No. CR**   2:22-cr-00207-JLS<br><br>**PLEA AGREEMENT FOR DEFENDANT<br>MICHAEL ALAN STOLLERY (a/k/a<br>"MICHAEL STOLLAIRE")** |

    1.    This constitutes the plea agreement between MICHAEL ALAN STOLLERY (a/k/a "MICHAEL STOLLAIRE," "the defendant" or "Defendant") and the Fraud Section of the Criminal Division of the United States Department of Justice ("the United States"). The plea agreement is based on the investigation of defendant's fraudulent offering of securities through the company Titanium Blockchain Infrastructure Services, Inc. ("TBIS"), namely BAR tokens, which are digital asset securities.

    2.    This agreement is limited to the Fraud Section of the Criminal Division of the United States Department of Justice and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

## DEFENDANT'S OBLIGATIONS

    3.    The defendant agrees to:



a.  Give up the right to indictment by grand jury and, at the earliest opportunity requested by the United States and provided by the Court, appear and plead guilty to a single-count Information, in the form attached to this agreement as Exhibit A or a substantially similar form, which charges defendant with securities fraud, in violation of 15 U.S.C. §§ 78j(b), 78ff and 17 C.F.R. § 240.10b-5.

b.  Not contest facts agreed to in this agreement.

c.  Abide by all agreements regarding sentencing contained in this agreement.

d.  Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.  Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.  Be truthful at all times with the United States Probation and Pretrial Services Office, and the Court.

g.  Pay the applicable special assessment at or before the time of sentencing unless defendant lacks the ability to pay such assessment.

h.  At or before the time of sentencing, satisfy any and all restitution/fine obligations based on ability to pay by delivering a certified check or money order to the Fiscal Clerk of the Court, to be held until the date of sentencing and, thereafter, applied to satisfy defendant's restitution/fine balance. Payments may be made to the Clerk, United States District Court, Fiscal Department, 255 East Temple Street, Room 1178, Los Angeles, California 90012.

i.  Ability to pay shall be assessed based on the Financial Disclosure Statement and all required supporting documents, referenced below, and all other relevant information relating to ability to pay.

j.  Defendant agrees that any and all restitution/fine obligations ordered by the Court will be due in full and immediately. The government is not precluded from pursuing, in excess of any payment schedule set by the Court, any and all available remedies by which to satisfy defendant's payment of the full financial obligation, including referral to the Treasury Offset Program.

2



k.      Complete the Financial Disclosure Statement on a form provided by the United States and, within 30 days of defendant's entry of a guilty plea, deliver the signed and dated statement, along with all the documents requested therein, to the United States by either email at usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Financial Litigation Section at 300 N. Los Angeles St., Suite 7516, Los Angeles, CA 90012.

l.      Authorize the United States to obtain a credit report upon returning a signed copy of this plea agreement.

m.      Consent to the United States inspecting and copying all of defendant's financial documents and financial information held by the United States Probation and Pretrial Services Office.

n.      Defendant understands that the government obtained additional material in this investigation that defendant has not been shown. In exchange for the government's obligations under this agreement, defendant gives up any right he may have had to review the additional material, regardless of whether it is arguably exculpatory or inculpatory. The government agrees not to use at sentencing any of the withheld material without providing it to defendant.

### THE UNITED STATES' OBLIGATIONS

4.      The United States agrees to:

a.      Not contest facts agreed to in this agreement.

b.      Abide by all agreements regarding sentencing contained in this agreement.

c.      At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offense up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

d.      Recommend that defendant be sentenced to a term of imprisonment no higher than the low end of the applicable Sentencing Guidelines range. For purposes of this agreement, the low end of the Sentencing Guidelines range is that defined by the Sentencing Table in U.S.S.G. Chapter 5, Part A.

e.      Except for criminal tax violations (including conspiracy to commit such violations chargeable under 18 U.S.C. § 371), not further criminally prosecute defendant for violations of 18 U.S.C.

3



§§ 1001, 1343, or 1957 arising out of defendant's conduct described in the agreed-to factual basis set forth in Exhibit B to this Agreement. Defendant understands that the United States is free to criminally prosecute defendant for any other unlawful past conduct or any unlawful conduct that occurs after the date of this agreement. Defendant agrees that at the time of sentencing the Court may consider the uncharged conduct in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed after consideration of the Sentencing Guidelines and all other relevant factors under 18 U.S.C. § 3553(a).

## NATURE OF THE OFFENSE

5.       Defendant understands that for defendant to be guilty of the crime charged in the sole count of the information, that is, securities fraud, in violation of 15 U.S.C. §§ 78j(b), 78ff and 17 C.F.R. § 240.10b-5, the following must be true:

(1) defendant willfully used a device or scheme to defraud someone, made an untrue statement of a material fact, failed to disclose a material fact that resulted in making the defendant's statements misleading, or engaged in any act, practice, or course of business that operates or would operate as a fraud or deceit upon any person;

(2) defendant's acts were undertaken, statement was made, or failure to disclose was done in connection with the sale of BARs, which were securities within the meaning of 15 U.S.C. § 78c(a)(10);

(3) defendant directly or indirectly used wire communications in connection with these acts, making this statement, or this failure to disclose; and

(4) defendant acted knowingly.

"Willfully" means intentionally undertaking an act, making an untrue statement, or failing to disclose for the wrongful purpose of defrauding or deceiving someone. Acting willfully does not require that the defendant know that the conduct was unlawful.

A fact is material if there is a substantial likelihood that a reasonable investor would consider it important in making the decision to purchase securities.

It is not necessary that an untrue statement passed through or over the wire communications so long as the wire communications were used as a part of the sale transaction.

It is not necessary that the defendant made a profit or that anyone actually suffered a loss.

## PENALTIES AND RESTITUTION

6.    Defendant understands that the statutory maximum sentence that the Court can impose for a violation of 15 U.S.C. §§ 78j(b), 78ff and 17 C.F.R. § 240.10b-5, is: twenty years of imprisonment; a three-year period of supervised release; a fine of $5 million or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

7.    Defendant agrees to make full restitution to the victims of the offense to which defendant is pleading guilty. Defendant agrees that, in return for the United States' compliance with its obligations under this agreement, the Court may order restitution to persons other than the victims of the offense to which defendant is pleading guilty and in amounts greater than those alleged in the count to which defendant is pleading guilty. In particular, defendant agrees that the Court may order restitution to any victim of any of the following for any losses suffered by that victim as a result: (a) any relevant conduct, as defined in USSG § 1B1.3, in connection with the offense to which defendant is pleading guilty; and (b) any charges not prosecuted pursuant to this agreement as well as all relevant conduct, as defined in USSG § 1B1.3, in connection with those charges. The parties currently believe that the applicable amount of restitution is approximately $21,000,000, but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing.

8.    Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements. Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

9.    Defendant understands that, by pleading guilty, the defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that once the Court accepts



defendant's guilty plea, it will be a federal felony for defendant to possess a firearm or ammunition. Defendant understands that the conviction in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case, and suspension or revocation of a professional license. Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty plea.

## FACTUAL BASIS

10.     Defendant admits that the defendant is, in fact, guilty of the offense to which defendant is agreeing to plead guilty. Defendant and the United States agree to the statement of facts set forth in Exhibit B to this agreement, and agree that this statement of facts is sufficient to support a plea of guilty to the charge described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 12 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

## SENTENCING FACTORS

11.     Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a). Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crime of conviction.

12.     The defendant and the United States agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level | 7 | U.S.S.G. § 2B1.1(a) |
| Loss of more than $9.5 million but not more than $25 million | 20 | U.S.S.G. § 2B1.1(b)(1)(l) |
| More than 10 Victims | 2 | U.S.S.G. § 2B1.1(b)(2)(A)(i) |

6



Defendant and the United States reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.

13.     Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

14.     Defendant and the United States reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

15.     **WAIVER OF CONSTITUTIONAL RIGHTS**

16.     Defendant understands that by pleading guilty, defendant gives up the following rights:

    a.     The right to persist in a plea of not guilty.

    b.     The right to a speedy and public trial by jury.

    c.     The right to be represented by counsel — and if necessary have the Court appoint counsel — at trial. Defendant understands, however, that, defendant retains the right to be represented by counsel — and if necessary have the Court appoint counsel — at every other stage of the proceeding.

    d.     The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

    e.     The right to confront and cross-examine witnesses against defendant.

    f.     The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

    g.     The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

    h.     Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

<u>**WAIVER OF APPEAL OF CONVICTION**</u>

17.     Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty plea was involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offense to which defendant is pleading guilty. Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant



is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea of guilty.

## WAIVER OF APPEAL AND COLLATERAL ATTACK

18.    Defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court, including, to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) the amount and terms of any restitution order, provided it requires payment of no more than $21 million; (e) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (f) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

19.    Defendant also gives up any right to bring a postconviction collateral attack on the conviction or sentence, including any order of restitution, except a post-conviction collateral attack based on a claim of ineffective assistance of counsel, a claim of newly discovered evidence, or an explicitly retroactive change in the applicable Sentencing Guidelines, sentencing statutes, or statutes of conviction. Defendant understands that this waiver includes, but is not limited to, arguments that the statute to which defendant is pleading guilty is unconstitutional, and any and all claims that the statement of facts provided in Exhibit B is insufficient to support defendant's plea of guilty.

20.    The United States agrees that, provided all portions of the sentence are at or below the statutory maximum specified above, the United States gives up its right to appeal any portion of the sentence, with the exception that the United States reserves the right to appeal the amount of restitution ordered if that amount is less than $21 million.

## RESULT OF WITHDRAWAL OF GUILTY PLEA

21.    Defendant agrees that if, after entering a guilty plea pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty plea on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the United States will be relieved

of all of its obligations under this agreement; and (b) should the United States choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

## RESULT OF VACATUR, REVERSAL OR SET-ASIDE

22.    Defendant agrees that if the count of conviction is vacated, reversed, or set aside, both the United States and defendant will be released from all their obligations under this agreement.

## EFFECTIVE DATE OF AGREEMENT

23.    This agreement is effective upon signature and execution of all required certifications by the defendant, the defendant's counsel, and a United States Department of Justice Trial Attorneys.

## BREACH OF AGREEMENT

24.    The defendant agrees that if defendant, at any time after the effective date of this agreement, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the United States may declare this agreement breached. For example, if the defendant knowingly, in an interview, before a grand jury, or at trial, falsely accuses another person of criminal conduct or falsely minimizes the defendant's own role, or the role of another, in criminal conduct, defendant will have breached this agreement. All of defendant's obligations are material, a single breach of this agreement is sufficient for the United States to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the United States in writing. If the United States declares this agreement breached, and the Court finds such a breach to have occurred, then:

a.    If the defendant has previously entered a guilty plea pursuant to this agreement, defendant will not be able to withdraw the guilty plea.

b.    The United States will be relieved of all its obligations under this agreement; in particular, the United States will no longer be bound by any agreements concerning sentencing and will



be free to seek any sentence up to the statutory maximum for the crimes to which defendant has pleaded guilty.

c.     The United States will be free to criminally prosecute defendant for false statement, obstruction of justice, and perjury based on any knowingly false or misleading statement by defendant.

25.     Following the Court's finding of a knowing breach of this agreement by defendant, should the United States choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a.     Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing this agreement and the filing commencing any such action.

b.     Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c.     Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

### COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES OFFICE NOT PARTIES

26.     Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the United States' sentencing recommendations or the parties' agreements to facts or sentencing factors.

27.     Defendant understands that both defendant and the United States are free to: (a) supplement the facts by supplying relevant information to the United States Probation Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines



calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 12 are consistent with the facts of this case. While this paragraph permits both the United States and defendant to submit full and complete factual information to the United States Probation Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the United States' obligations not to contest the facts agreed to in this agreement.

28.   Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty plea, and defendant will remain bound to fulfill all defendant's obligations under this agreement. Defendant understands that no one — not the prosecutor, defendant's attorney, or the Court — can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

## NO ADDITIONAL AGREEMENTS

29.   Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the United States and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

## PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

30.   The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES DEPARTMENT OF JUSTICE
CRIMINAL DIVISION
FRAUD SECTION

JOSEPH S. BEEMSTERBOER
Acting Chief

_____          5/12/22
Kevin Lowell                                     Date
Tian Huang
Trial Attorneys, Fraud Section

_____          25.11.2022
Michael Alan Stollery                            Date
Defendant

_____          5/11/22
Andrew Holmes                                    Date
Attorney for Defendant Michael Alan Stollery

## CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am

M S

pleading guilty because I am guilty of the charges and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____        $05-11, 22$
Michael Alan Stollery                           Date
Defendant

## CERTIFICATION OF DEFENDANT'S ATTORNEY

I am Michael Alan Stollery's attorney. I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of guilty plea pursuant to this agreement.

_____        5/11/22
Andrew Holmes                                   Date
Attorney for Defendant Michael Alan Stollery

13

1  JOSEPH S. BEEMSTERBOER
   Acting Chief
2
   KEVIN LOWELL
3  TIAN HUANG
   Trial Attorneys
4  United States Department of Justice
   Fraud Section, Criminal Division
5      1400 New York Avenue
       Washington, D.C. 20005
6      Telephone:   (202) 262-7795
       E-mail:      kevin.lowell@usdoj.gov
7
   Attorneys for Plaintiff
8  UNITED STATES OF AMERICA

9

10                  UNITED STATES DISTRICT COURT

11          FOR THE CENTRAL DISTRICT OF CALIFORNIA

12  UNITED STATES OF AMERICA,          | No. CR

13              Plaintiff,

14                  v.                  | **EXHIBIT B TO PLEA AGREEMENT FOR DEFENDANT MICHAEL ALAN STOLLERY (a/k/a "MICHAEL STOLLAIRE")**

15  MICHAEL ALAN STOLLERY ("a/k/a
    MICHAEL STOLLAIRE"),

16              Defendant.

17

18          **STATEMENT OF FACTS IN SUPPORT OF DEFENDANT**

19          **MICHAEL ALAN STOLLERY'S PLEA AGREEMENT**

20      Defendant MICHAEL ALAN STOLLERY represents and admits that the following facts are

21  true:

22  A.   **INTRODUCTORY ALLEGATIONS**

23      At times relevant to this Information:

24      *Relevant Individuals, Entities, Federal Agencies, and Terms*

25      1.      Titanium Blockchain Infrastructure Services, Inc. ("TBIS"), was a California corporation

26  based in Sherman Oaks, California. TBIS offered cryptocurrency investment opportunities to the public

27  and touted these opportunities to the public through social media. TBIS conducted its business principally

28
                                        (Read and agreed to MS )

by means of a website accessible at www.this.io.  The TBIS website was accessible worldwide to the general public and was accessed by individuals within the Central District of California and elsewhere.

2.   EHI, a California corporation, was also based in Sherman Oaks, California, within the Central District of California, and provided technology consultancy services.

3.   Defendant MICHAEL ALAN STOLLERY, also known as "Michael Stollaire," was a resident of Sherman Oaks, California, within the Central District of California.  Defendant STOLLERY served as the Founder, CEO, President, and sole Director of TBIS, and was the President and sole Director of EHI.

4.   The United States Securities and Exchange Commission ("SEC") was an independent agency of the executive branch of the United States government. The SEC was responsible for protecting investors, enforcing federal securities laws, and promulgating rules and regulations in keeping with the same.

5.   A "digital asset" or "digital token" generally referred to an asset issued and/or transferred using distributed ledger or blockchain technology, including assets referred to as "cryptocurrencies," "virtual currencies," "digital coins," and "digital tokens."

6.   The "blockchain" was a distributed public ledger that recorded incoming and outgoing cryptocurrency transactions.

7.   A cryptocurrency white paper generally provided investors and prospective investors with an explanation of a particular cryptocurrency investment offering, including the purpose and technology behind the offering, how the offering was different from other cryptocurrency opportunities, and the prospects for the offering's profitability.

8.   Under Title 15, United States Code, Section 77b(a)(1), a "security" included a wide range of investment vehicles, including "investment contracts." Investment contracts were instruments, schemes, or transactions through which a person invested money in a common enterprise and reasonably expected profits or returns derived from the entrepreneurial or managerial efforts of others.  Federal law required that an issuer of securities register offers and sales of those securities with the SEC when they offered and sold securities to the public, absent certain specified exemptions.

(Read and agreed to ____)

9.　　An initial coin offering ("ICO") was a capital raising event in which an entity offered investors a unique "coin" or "token" in exchange for consideration—most commonly in the form of established virtual currencies or fiat currency. These tokens were issued on a blockchain and were oftentimes listed on online platforms, called virtual currency exchanges, where they were tradable for virtual or fiat currencies.

10.　　To participate in an ICO, investors were typically required to transfer virtual currencies to the issuer's address, online wallet, or other account. During an ICO, or after its completion, the issuer would typically distribute its unique "tokens" to the participants' unique address on the related virtual currency's blockchain. Similar to stockholders in an initial public offering ("IPO"), holders of these tokens were then entitled to certain rights related to a venture underlying the ICO, such as profits, shares of assets, use of certain services provided by the issuer, and voting rights.

11.　　ICOs and cryptocurrency investment opportunities that qualified as "securities" were required to be registered with the SEC.

### *The Promotion of TBIS' Unregistered Securities Offering*

12.　　From in or around November 2017 to in or around May 2018, Defendant STOLLERY conducted an ICO of TBIS and introduced TBIS as an investment opportunity to the public through social media and the TBIS Website. Defendant STOLLERY did not register the ICO regarding its cryptocurrency investment offering with the SEC; nor did defendant STOLLERY have a valid exemption from the SEC's registration requirements.

13.　　On or about August 14, 2017, defendant STOLLERY announced on his personal Twitter feed "I just came up with a new idea for an Initial Coin Offering (ICO). Blockchain developers needed. Stay tuned." From that point, defendant STOLLERY increasingly tweeted about digital assets generally, and embarked on a social media campaign to lure investors to invest in TBIS.

14.　　Within weeks of announcing that he "just came up with a new idea" for an ICO, defendant STOLLERY mentioned TBIS for the first time. One of these posts, on Facebook, depicted a picture of the TBIS logo and a photo showing the cover of a TBIS "White Paper." A little more than a week after these posts, defendant STOLLERY incorporated TBIS on or about October 10, 2017.

3

(Read and agreed to __W__)

15.    On the same day he incorporated TBIS, defendant STOLLERY also created an official TBIS Twitter account, published a link to the official TBIS Telegram channel and asked his followers to join, and posted an announcement on TBIS's Facebook page to a YouTube video titled "TBIS Introduction."

16.    Through social media, defendant STOLLERY touted TBIS as a start-up company seeking to develop an IT platform using blockchain technology. On its various social media accounts, TBIS's profile contained some variation of the following marketing message: "Just as steel changed the building industry forever, Titanium will usher in a new era of network construction, based on blockchain technology." Defendant STOLLERY also posted an official white paper to the TBIS website in order to convince investors to invest in TBIS.

17.    Soon after establishing TBIS's social media presence, defendant STOLLERY announced the creation of a new cryptocurrency token or coin. Specifically, on or about October 30, 2017, defendant STOLLERY tweeted "The Titanium BAR Token, now listed on @CryptoCompare —." Defendant STOLLERY also retweeted a post from CryptoCompare (a website devoted to digital assets): "BAR added to Upcoming ICO list." The next day defendant STOLLERY tweeted that the TBIS ICO had been rated and listed on Coin Telegraph (another website that provided news regarding digital assets and blockchain).

18.    Defendant STOLLERY also promoted TBIS as an investment and emphasized that holders of BAR would share in TBIS's future earnings and in appreciation in the value of the BAR digital assets. In a transcript of an online interview posted on or about January 11, 2018, defendant STOLLERY even compared investing in TBIS to purchasing Google stock early on at $75 per share: "I've gone outside the subculture of blockchain and people on the street are investing in it like they would buy stocks and, you know, Intel or Google on Wall Street. . . . [L]ike Google I was one of the lucky that was invited to the lottery, and I bought it at $75. . . . And so that's the way I view Titanium."

19.    In sum, defendant STOLLERY, primarily through the use of the TBIS website, social media platforms, and news media websites, encouraged and enticed investors to invest in TBIS.

4

(Read and agreed to _____)

**B.     THE SCHEME TO DEFRAUD TBIS INVESTORS**

20.     Beginning at least as early as in or around November 2017, and continuing through at least in or around May 2018, both dates being approximate and inclusive, in the Central District of California, and elsewhere, defendant STOLLERY, knowingly and willfully, directly and indirectly, by the use of the means and instrumentalities of interstate commerce, in connection with the purchase and sale of BARs, used and employed manipulative and deceptive devices and contrivances, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5, by: (1) employing a scheme to defraud; (2) making untrue statements of material fact and omitting material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (3) engaging in acts, practices, and courses of business which operated and would operate as a fraud and deceit upon purchasers of BARs before and during TBIS's ICO. Defendant STOLLERY did so by making and causing to be made materially false and fraudulent statements and material omissions about, among other things, corporate relationships, client testimonials, and the functionality of the BAR, which purportedly affected – through the operation of supply and demand – the value of BARs.

21.     The scheme to defraud operated, in substance, as follows:

a.     Beginning in late 2017, defendant STOLLERY launched an unregistered offer and sale of BARs via a TBIS ICO, which purportedly was designed to "crowdfund" to raise money to create products and services for the TBIS platform. On or around November 10, 2017, defendant STOLLERY tweeted that the TBIS "pre-sale" to the ICO would be open until December 31, 2017, and directed people to the TBIS website, www.tbis.io. The TBIS ICO officially launched on January 1, 2018, and lasted at least through January 25, 2018.

b.     In execution of the fraudulent scheme, defendant STOLLERY solicited investors to purchase BARs from TBIS by making a series of false and misleading statements on the TBIS website, including in versions of the White Paper published on or about December 14, 2017, and on or about January 16, 2018, on the TBIS website, and in defendant STOLLERY'S social media and press statements. Each of these statements, described in more detail below, was material to investors.

5

(Read and agreed to ____)

**The TBIS White Paper**

        c.     Defendant STOLLERY was the lead author of the TBIS White Papers and was involved in every revision to the White Papers through at least the January 16, 2018 White Paper. The White Papers included the following statements, each of which defendant STOLLERY then knew were false and misleading:

        i.     "BAR is a "utility token." BAR, however, did not have any functionality at the time of the ICO.

        ii.     "As EHI's sister company, [TBIS] will simply inherit EHI's clientele . . . What follows is a short excerpt of some of EHI's customers, which [TBIS] will leverage immediately.

CLIENTS

- Accenture
- APPLE
- Applied Materials
- Boeing
- Cargill
- Citizens Bank
- eBay
- ERCOT
- Exelon
- General Electric
- Hewlett-Packard
- Honeywell
- IBM
- Intel
- Microsoft
- PayPal
- Pfizer
- Santa Barbara Bank and Trust

6

(Read and agreed to ____)

- Synchrony Financial
- The Bank of Scotland in Ireland
- The Federal Reserve Bank
- The Royal Bank of Scotland
- TrueCar.com
- Universal Studios
- Walt Disney"

**TBIS Website**

d.      Just as he did with the White Papers, on TBIS' Website, defendant STOLLERY also made false and misleading statements about TBIS's ability to leverage EHI's purported customers. Specifically, defendant STOLLERY stated that "As EHI's sister company, [TBIS] will simply inherit EHI's clientele . . . What follows is a short excerpt of some of EHI's customers, which [TBIS] will leverage immediately," and included the logos of various prominent companies, including McDonald's, Pfizer, and Microsoft, which defendant STOLLERY knew at the time was false and misleading.

e.      TBIS' Website also included a hyperlink to EHI's Website for its client list and testimonials. However, defendant STOLLERY knew at the time that the purported client testimonials were false and misleading in several ways, including that (a) for at least two of the companies, the person never gave the testimonial that defendant STOLLERY posted; (b) for at least two of the companies, the person quoted as providing a testimonial never held the position listed in the testimonial; (c) for at least four of the companies, the person quoted as providing a testimonial no longer worked at the company when defendant STOLLERY posted their testimonials; and (d) for at least four of the companies, the company did not authorize the posting of the testimonial.

f.      For example, one of the illegitimate testimonials was from a purported "Director of Network Engineering" for eBay. The testimonial stated that "EHI is all about doing a quality job and delivering the results without delay. It has been a pleasure working with EHI." In reality, the purported source of the testimonial never held or used the title that was attributed to him, and he denied providing the testimonial that was attributed to him. Moreover, eBay did not authorize the use of the testimonial or the company's name or logo on the TBIS website.

(Read and agreed to ⩗)

g.      Another testimonial was attributed to a purported operations manager named "EHI Gibson" at TrueCar.com. That testimonial stated that EHI "installed and managed a sophisticated set of tools" and that TrueCar was "able to better manage and administer the complex system with the help of EHI's expertise." But there is no record of any individual with the last name of Gibson having worked at TrueCar or its predecessor since September 2015. Moreover, TrueCar would not have approved the use of the testimonial in any event, given the absence of any ongoing business relationship between the company and TBIS, EHI, or defendant STOLLERY.

h.      Another example is the purported testimonial from a "service delivery manager" with the Federal Reserve Bank. The testimonial states, in its entirety, "Best enterprise management team I have ever worked with. Talented, conscientious, hard worker, excellent communication skills. The entire package!" The purported author of the testimonial, however, was not an employee of the Federal Reserve Bank, nor authorized to speak on its behalf, but rather was a contractor from May 2010 to September 2012.

**Social Media and Press**

i.      Via his personal Instagram account "michaelstollaire," defendant STOLLERY, on January 24, 2018, posted a photo of himself with the caption "Doing the voiceover for an upcoming TV spot about Titanium for LA cable TV and to air on American Airlines monitors starting February 1, 2018!" Relatedly, on January 26, 2018, TBIS's YouTube account posted a video with the title, "TITANIUM: Cable Television Advertisement and Airing on American Airlines Monitors Internationally." Both statements were false and Defendant STOLLERY knew they were false at the time he made them.

j.      In a January 11, 2018 interview on a YouTube channel, "P2P Cryptoz," when asked how TBIS would compete with the "giants" in the industry, defendant STOLLERY stated: "[i]t's the inroad that I previously had with my first company, EHI. These relationships are real. We're in talks with McDonald's, with Walt Disney, with Intel, with Verizon right now, . . . We've got quite a client list." Defendant STOLLERY made this statement, even though he knew then that it was false.

22.     As a result of the fraudulent scheme, from on or about November 17, 2018, through at least January 25, 2018, defendant STOLLERY obtained approximately $21 million in the form of various

8                                     (Read and agreed to ⟨∿⟩)

1  digital assets, such as Ether and Bitcoin, and cash from dozens of investors located in at least 18 states,

2  including California, and abroad, who purchased BAR.

3      23.     Defendant STOLLERY did not use all of the invested money as promised but instead

4  comingled some of the ICO investors' funds with his personal funds, using at least a portion of the

5  offering proceeds for expenses unrelated to TBIS, such as credit card payments and the payment of bills

6  for defendant STOLLERY's Hawaii condominium.

7  **C.**     **EXECUTION OF THE FRAUDULENT SCHEME**

8      24.     On or about January 4 or 5, 2018, within the Central District of California, and elsewhere,

9  for the purpose of executing the above described scheme to defraud, and in furtherance of the

10  manipulative and deceptive devices described above, defendant STOLLERY, directly and indirectly

11  caused the use of an instrumentality of interstate commerce in connection with the purchase and sale of

12  securities, namely, the transfer of approximately $19,999.98 from a Florida-based financial institution to

13  a bank account for TBIS, which defendant STOLLERY controlled and was located in Sherman Oaks,

14  California, for the purchase of approximately 20,000 BARs by an investor located in Florida.

15  **FORFEITURE ALLEGATION**

16  [18 U.S.C. § 982]

17      25.     Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given

18  that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United

19  States Code, Section 982(a)(2), and Title 28, United States Code, Section 2461(c), in the event of the

20  defendant's conviction of the offense set forth in this Information.

21

22      26.     The defendant, if so convicted, shall forfeit to the United States of America the following:

23      (a)     all right, title and interest in any and all property, real or personal, constituting, or

24  derived from, any proceeds obtained, directly or indirectly, as a result of the offense, including up to

25  $21,000,000; and

26      (b)     to the extent such property is not available for forfeiture, a sum of money equal to

27  the total value of the property described in subparagraph (a).

28

9

(Read and agreed to_____)

Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), the defendant, if so convicted, shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of the defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

***

I have read this STATEMENT OF FACTS IN SUPPORT OF DEFENDANT MICHAEL ALAN STOLLERY'S PLEA AGREEMENT in its entirety. I have had enough time to review and consider this statement of facts, and I have carefully and thoroughly discussed every part of it with my attorney. I agree that this Statement of Facts is sufficient to support a plea of guilty to the charge described in the plea agreement and to establish the Sentencing Guidelines factors set forth in paragraph 12 of the plea agreement.

MICHAEL ALAN STOLLERY
Defendant

DATE

10

(Read and agreed to )

1    I am MICHAEL ALAN STOLLERY'S attorney. I have read this

2 STATEMENT OF FACTS IN SUPPORT OF DEFENDANT MICHAEL ALAN STOLLERY'S PLEA

3 AGREEMENT in its entirety. I have had enough time to review and consider this statement of facts and

4 have discussed it with defendant MICHAEL ALAN STOLLERY. I agree that this Statement of Facts is

5 sufficient to support a plea of guilty to the charge described in the plea agreement and to establish the

6

7 Sentencing Guidelines factors set forth in paragraph 12 of the plea agreement.

8

9 ANDREW HOLMES                                    $\underline{5}/11/22$
   Attorney for Defendant                          DATE

10 MICHAEL ALAN STOLLERY

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                        11                    (Read and agreed to _____)